RANKE v. CORPORATION & SECURITIES COMMISSION.

1. BROKERS—REAL ESTATE—FINDING OF CORPORATION AND SECURITIES COMMISSION—EVIDENCE—RULES AND REGULATIONS.

Evidence supported findings of fact of corporation and securities commission that real estate broker did not give a copy of real estate listing agreement to vendor at time agreement was signed and that agreement was contrary to rules and regulations promulgated by the commission as to termination of agreement (2 Comp. Laws 1929, § 9818, as amended by Act No. 57, Pub. Acts 1943; § 9819; Administrative Code, p. 181).

2. CONSTITUTIONAL LAW—AUTHORITY DELEGATED BY LEGISLATURE TO AN ADMINISTRATIVE OFFICER.

The legislature, within limits defined in a statute, may confer authority on an administrative agency to make rules as to details, to find facts, and to exercise some discretion, in the administration of a statute.

3. SAME—ADMINISTRATIVE AGENCIES.

An administrative agency may not, under the guise of its rule-making power, abridge or enlarge its authority or exceed the powers given to it by the statute.

4. BROKERS—STATUTES—REVOCATION OF LICENSE—RULES AND REGULATIONS.

Statute authorizing corporation and securities commission to revoke or suspend a real estate broker's license for "dishonest or unfair dealing" empowered commission to enumerate additional grounds of such dealing in making rules and regulations in harmony with the subject matter legislated upon (2 Comp. Laws 1929, § 9818, as amended by Act No. 57, Pub. Acts 1943).

5. SAME—UNFAIR DEALING—FURNISHING COPY OF LISTING TO VENDOR.

Administrative agency's rule that real estate broker who obtained a listing would be guilty of unfair dealing if he did not give vendor a true copy thereof at the time listing was secured *held*, a valid rule for violation of which suspension of license could be made (2 Comp. Laws 1929, § 9818, as amended by Act No. 57, Pub. Acts 1943).

6. SAME—UNFAIR DEALING—TERMINATION OF LISTING AGREEMENT.

Administrative agency's rule that real estate broker's listing agreement should contain a definite termination date and prohibiting requirement that vendor shall notify broker of intention to cancel such listing after such definite expiration date *held*, a valid rule for violation of which suspension of license could be made on ground of unfair dealing (2 Comp. Laws 1929, § 9818, as amended by Act No. 57, Pub. Acts 1943).

7. CONSTITUTIONAL LAW—REAL ESTATE BROKER'S LICENSE—STATUTES—ADMINISTRATIVE RULES.

A real estate broker's license to sell real estate is a privilege granted by the State and is subject to the statutory law and reasonable and proper rules of the administrative agency charged with the enforcement of the statute (2 Comp. Laws 1929, § 9818, as amended by Act No. 57, Pub. Acts 1943).

8. BROKERS—REVOCATION OF LICENSE—HEARING—ABSENCE OF LI-
CENSEE.

Where real estate broker was given statutory notice of hearing
before his license was suspended but remained away on advice
of counsel who had anticipated the hearing would be ad-
journed, his absence under such circumstances was not fatal
to validity of the hearing (2 Comp. Laws 1929, § 9818, as
amended by Act No. 57, Pub. Acts 1943).

9. COSTS—PUBLIC, QUESTION—SUSPENSION OF LICENSE OF REAL ES-
TATE BROKER.

No costs are allowed on appeal from order of administrative
agency suspending real estate broker's license for 90 days,
where public question is involved.

Appeal from Michigan Corporation & Securities
Commission. Submitted January 8, 1947. (Docket
No. 12, Calendar No. 43,103.) Decided April 8,
1947.

Rudolph C. Ranke, licensed real estate broker,
was cited for conduct constituting dishonest and
unfair dealing. License suspended for 90 days.
Defendant appeals. Affirmed.

*Victor H. Wehmeier,* for appellant.

*Eugene F. Black,* Attorney General, *Edmund E.*
*Shepherd,* Solicitor General, and *Daniel J. O'Hara,*
Assistant Attorney General, for Corporation & Se-
curities Commission.

SHARPE, J. This is an appeal from an order of
the Michigan corporation and securities commission.
Plaintiff, a licensed real estate broker, solicited an
exclusive listing from George D. Ostergren for the
sale of his house in Detroit. A printed form of list-
ing agreement was signed June 29, 1944, and a copy
mailed by the broker to the seller next day. Within
a few days, plaintiff found a buyer for the property,

accepted a deposit on the property and forwarded the same to the seller, who promptly returned it.

Thereafter, plaintiff brought an action in the common pleas court in the city of Detroit for his commission and obtained a judgment for the full amount of his commission. After plaintiff brought the above action, the seller filed a complaint against plaintiff with the corporation and securities commission claiming that no selling price had been agreed upon. An informal hearing was had at which time plaintiff was advised to satisfy the uncollected judgment. The judgment was not satisfied and plaintiff collected the same by garnishment. Plaintiff was cited to appear before a deputy commissioner on October 13, 1944. Plaintiff's attorney attempted to have the hearing postponed and continued to a day certain when plaintiff and his attorney could be present. The deputy commissioner refused a continuance of the cause and proceeded with the hearing. Plaintiff's attorney appeared and took part in the hearing. The seller was present at the hearing and testified that the selling price had not been agreed upon; and that the listing had been signed in blank.

Section 9818, 2 Comp. Laws 1929, as amended by Act No. 57, Pub. Acts 1943 (Comp. Laws Supp. 1945, § 9818, Stat. Ann. 1946 Cum. Supp. § 19.803), covers the subject of suspension or revocation of license. The act also provides that a license may be suspended or revoked for "Any other conduct whether of the same or a different character than hereinbefore specified, which constitutes dishonest or unfair dealing."

The rules and regulations of the commission (real estate division) provide:

"Any broker or salesman who fails or neglects to abide by the following rules and regulations adopted

by the Michigan corporation and securities commission shall be presumed to be guilty of unfair dealing:

"1. A broker or salesman who obtains a listing shall, at the time of securing such listing, give the party or parties signing such listing a true copy thereof.

"Each listing agreement shall have set forth in its terms a definite expiration date and shall contain no provision therein requiring the party signing such listing to notify the broker of his intention to cancel such listing after such definite expiration date." Michigan Administrative Code 1944, p. 181.

Section 9819, 2 Comp. Laws 1929 (Stat. Ann. § 19.804), deals with notice and hearing and provides in part:

"The findings of fact made by the commission, acting within its powers, shall in the absence of fraud be conclusive, but the Supreme Court shall have the power to review questions of law involved in any final decision or determination of the commission."

It is not seriously disputed that the seller did not receive a copy of the agreement until the day following the signing of the same; and that the agreement gave the broker the exclusive right for 90 days from the date of execution "and thereafter until you receive from me (seller) a ten days' written notice terminating this agreement."

There is competent evidence to support the finding of facts by the deputy commissioner and the affirmance of such action by the commission.

It is urged by plaintiff that the commission has no power to make rules and regulations relative to suspension of license. Section 9818, 2 Comp. Laws 1929, as amended by Act No. 57, Pub. Acts 1943, provides and enumerates conditions under

which licenses may be cancelled or revoked and also provides: "(j) Any other conduct whether of the same or a different character than hereinbefore specified, which constitutes dishonest or unfair dealing." By virtue of the above quoted portion of the act, the commission adopted the rules and regulations hereinbefore mentioned.

In *Argo Oil Corporation* v. *Atwood,* 274 Mich. 47, we said:

"It is too well settled to need the citation of supporting authorities that the legislature, within limits defined in the law, may confer authority on an administrative officer or board to make rules as to details, to find facts, and to exercise some discretion, in the administration of a statute."

In *California Drive-in Restaurant Association* v. *Clark,* 22 Cal. (2d) 287, 302 (140 Pac. [2d] 657, 147 A. L. R. 1028), that court said:

"It is true that an administrative agency may not, under the guise of its rule-making power, abridge or enlarge its authority or exceed the powers given to it by the statute, the source of its power. * * * However, 'the authority of an administrative board or officer, * * * to adopt reasonable rules and regulations which are deemed necessary to the due and efficient exercise of the powers expressly granted cannot be questioned. This authority is implied from the power granted.' ".

The limitation, placed upon the commission by the act, is that the conduct complained of must constitute dishonest or unfair dealing. The act provides a standard by which the commission shall be guided in the making of rules. It would be quite impossible for the legislature to enumerate all the specific acts which would constitute dishonest or unfair dealing upon the part of those engaged in

the sale of real estate. The act authorizes the commission to enumerate additional grounds of dishonest or unfair dealing and to make rules in harmony with the subject matter legislated upon.

We have examined the rules in issue in the instant case and conclude that they have a proper relationship to the subject of suspension or revocation of licenses. The enforcement of such rules did not deprive plaintiff of any personal or property rights. His license to sell real estate is a privilege granted by the State and is subject to the statutory law and the reasonable and proper rules of the commission. The privilege of engaging in the sale of real estate is conditioned upon the proper observance of the law and rules relating to such business.

It is also urged by plaintiff that he was not given a proper hearing on the question of his guilt. The act provides that a hearing shall be held before a license is suspended or revoked. 2 Comp. Laws 1929, § 9819 (Stat. Ann. § 19.804). Plaintiff was notified of the hearing as is required by the act, but remained away from the hearing on the advice of his counsel who anticipated that the hearing would be adjourned. A hearing was held which was participated in by plaintiff's counsel, and testimony was taken. Plaintiff had an opportunity to be present at the hearing and his absence therefrom, under the circumstances of this case, was not fatal to the validity of the hearing.

The order of the commission suspending plaintiff's license for a period of 90 days is affirmed, but without costs as a public question is involved.

Carr, C. J., and Butzel, Bushnell, Boyles, Reid, and North, JJ., concurred. Dethmers, J., did not sit.